PHL Variable Your Honors, good morning. Motions for reconsideration are relatively rare. Motions for reconsideration are actually granted, or rarer still. This is an instance of the latter case. Here, reconsideration of the Town of Oyster Bay's pre-answer motion to dismiss was occasioned by the District Court going beyond the briefing that had been presented to it on that motion by the parties, and searching the record not necessarily for allegations that could be viewed in the light most favorable to my client, the plaintiff, but rather for alternative grounds on which you could base a decision of dismissal, which is what occurred here. Namely, the Court arrived in an erroneous factual conclusion that the Town Attorney for the Town of Oyster Bay was not authorized to sign a certain amendment on behalf of the Town Supervisor when in fact he had been duly authorized to do so by the Town Board. The result was that that finding rippled through the entirety of the Court's initial determination of dismissal. And on reconsideration, in light of this fact, the District Court had to revisit those findings, vacate those as the basis for its determination of dismissal, but as often is the case, ended up finding alternative grounds to dismiss on reconsideration. The proposed second amendment, second amended complaint, seems to concede that the June 8, 2010 resolution was not directed at PHL. It was in response to a memorandum from the Town Attorney, as I understand it, proposing that, and I quote, that the Supervisor be referred to a guarantee of payment and performance with SRB's bank. So how is that June 8, 2010 resolution relevant here? It is relevant, Your Honor, because it does form the basis of what we believe to be the Town Board's authorization for these types of transactions. What we believe occurred and what has been borne out during subsequent aspects of the related criminal proceedings, which are part of our reply brief, the Town of Oyster Bay crafted that specific resolution, 605 of 2010, in a broad way to permit ongoing discussions and negotiations with various lenders for Mr. Singh. That authorization wasn't, I'm sorry, that resolution was in fact used on a prior occasion for a different loan transaction that the Town of Oyster Bay concedes was a legal transaction and an authorized transaction, despite the fact that none of the terms of that particular transaction are listed in this resolution. We believe that the resolution was crafted in a way so as to give the Town Board and the Town Supervisor flexibility to enter into a series of these transactions. Right or wrong, that is the way that we believe that the business was going on at the Town of Oyster Bay. Isn't it somewhat implausible that the June 10th resolution authorized a town attorney to enter a loan agreement with unknown financiers on unknown terms? Well, Your Honor, it's not necessarily unknown financiers on unknown terms. The concessionaire had been obligated to prepare and make certain capital improvements and provide certain services at these facilities, and the Town Board felt compelled to assist him in obtaining the financing for the simple fact that he doesn't own the property and can't use it as security. And so, to answer your question, no, I don't think it's necessarily unusual. Well, maybe it's unusual, but it's not necessarily unreasonable to think that the Town Board would have given that authorization so that the Town Supervisor could then engage in an ongoing series of negotiations, which is what occurred. Now, here, though, we have, if we look at Resolution 605-210, it basically authorizes activity, quote, in order to facilitate the concessionaire's ability to obtain financing to make capital improvements. It doesn't say anything about the town being put on the hook. Well, Your Honor, as part of our reconsideration motion, we also had included additional information that had come out after the briefing pursuant to FOIL requests. In that materials, it was shown that before the Town Board at the time and prior to the 605-210 resolution, that the Town Board had actually been presented with copies of loan guarantees from other lenders, and that a town attorney . . . What the law requires is essentially that the town approve the contract, right? If we require, quote, approval by the Town Board of the contract, right? Yes, Your Honor. So aren't we far afield at this point where we're talking about a resolution that occurs in more than a year before the guarantee agreement goes into effect that's indefinite as to the town's role to act as a guarantor and be a multimillion dollar on the hook if the loan goes badly? How is this consistent with the law? Your Honor, respectfully, I think we're going far afield by engaging in a discussion as to the sufficiency of the specific resolutions at this juncture and at this stage procedurally in the case. What we were obligated to do upon the pleading here was to establish — not that a contract existed, but to plead that we stated a case. And, Your Honor, as we pointed out in our papers, this is not a case that is being taken in a silo in isolation. This is but one of several cases involving the town of Oyster Bay, this concessionaire, and various lenders. And this case, the district court's decision in this case is the outlier. And two different state court justices in substantially identical cases with substantially identical loan transactions at the exact same procedural stage using and looking at the exact same resolutions came to the opposite conclusion. They found that at the stage that we were at, it was sufficient for us, as the lender, to state a claim and state that it was authorized and go a step further and provide copies of the opinion letters given by the town attorney, the outside counsel, and the resolutions relied upon them to state a claim to get us in the door. Right? You know, we're a gatekeeper function. The district court was there to make sure that we paid our admission fee and our ticket was good. It wasn't a goalie. It wasn't there to knock us out at that early stage and put an evidentiary burden on us to come forward with different resolutions that may or may not ultimately support the claim. And so, Your Honor, I think that where this case got off track was when we start talking about whether 605-210 is within a sufficient amount of time before our loan, whether it specifically references or doesn't reference our loan, what else was before the town board at the time. Those are all questions that I'd love to know the answer to and I want to ask at discovery. The fact is, we pleaded the case to get in the door and to make that happen, but the district court started going into an analysis as to whether that on its face was sufficient, an analysis that the two state courts declined to go through and absolutely rejected in finding that was too high of a burden at the pleading stage. So . . . I think it understood that at the pleading stage, the court is permitted to look at documents that are referenced, otherwise referenced or integral to the complaint. And if you have a state law here that requires approval by the town board, I don't see why a district court isn't well within its discretion to look at the underlying town resolution or absence of a town resolution. And I'm not saying that the court couldn't have. What I am saying, though, is that there were also opinion letters given by the town attorney, by the town's outside counsel, that we reasonably relied upon in coming to the conclusion that they were duly authorized. And in the global circumstances at issue here, we got through the door as far as pleading that the authorization occurred. Whether down the line that bears out is an issue for summary judgment, not a dismissal. On the misrepresentation point, the New York Court of Appeals has stated that in the Parsa case, that a party contracting with a municipality is chargeable with knowledge of the statutes which regulate its contracting powers and is bound by them. So how could your client's reliance have been reasonable under that circumstance? Well, Your Honor, I direct you to the case cited in our brief, which was . . . and I will find it. Because if Parsa says right, in part, that the purpose for charging parties with knowledge of municipal statutes is to protect the public from governmental misconduct or improvidence. Yes, Your Honor. But the Parsa case . . . well, I'm sorry, the remediation capital funding case by the First Department also talks about how a party who requests and obtains an opinion letter and seeks further assurances in advance of entering into a transaction has, in a sense, gone through its due diligence. And keep in mind, Your Honor, this is not simply us relying on their word. Prior to the closing, our clients also received certified copies of the resolutions that issued an outside counsel's opinion letter as well. So while we are charged with understanding the laws, we also had a reasonable justification in relying upon the opinion letters and the documentation given to us by the town as to its own processes and as to its own approvals. Thank you. Thank you. Good morning, Your Honors, and may it please the Court. Kathleen Sullivan for Applee, the resolution of contracts with the city, an absolute and indispensable prerequisite for the formation of a contract with the city, for good reason. And it's exactly, Chief Judge Katzman, as you said, reading from Parsa, as the New York Court of Appeals told us, it's designed to protect the public from municipal improvenance or corruption. And the prime law also, or the same provision, requires that the contract be executed by the supervisor. If we just look at the text of it, and here it seems you've conceded that, or at least it's not disputed, I'm not sure if you've conceded it, but it's not disputed that it could still be valid, the contract could still be valid, even if not executed by the supervisor. That's correct, Your Honor. It's undisputed here and under New York law that the power to execute can be delegated to the town supervisor. But what cannot be delegated is the decision by the town board to approve the contract, either in advance or through ratification. And that's what was missing here. And the failure to plead a town board formal resolution of approval for the supposed 2011 guarantee is fatal. And could I start with the New York law reasons why? My friend says, oh, we don't have to plead it. Well, with respect, you do have to plead it under New York law. If you look to Judge Feuerstein's excellent reasoning in the special appendix at page 23, you'll see that she cites two cases, the Merrick against Town of Hempstead case and the Plaza Drive against Town of Senate case. Those are motion to dismiss cases under New York law that say that the failure to plead town board formal resolution approving a contract is fatal to a complaint under New York law. Second, Your Honor, we certainly think even if that wasn't New York law, Iqbal Twombly would prevent you from allowing this pleading to go forward because this is a case in which you're absolutely right. The judge did look beyond the pleading to a set of documents. Why? Because PHL attached all these documents to the record. In fact, sorry, to the complaint. In fact, you can look at the joint appendix at pages 13 to 146. They attached 130 pages of documents to their complaint. And what was missing there was any town resolution authorizing the supposed 2011 contract. In fact, there are no town resolutions pleaded there at all. Well, let's suppose then, you know, we agree with you that there's not a town resolution that does it, that the breach of contract claim can't proceed. Correct, Your Honor. We also have representations by counsel here by the outside law firm Harris Beach, by the And I have to wonder, for purposes of the fraud and misrepresentation claims, those that aren't arguably waived or not, for which we have jurisdiction, appellate jurisdiction, the New York Court of Appeals in the DGJ management case states that in derogation of the usual Schumacher rule, that where a plaintiff has gone to the trouble to insist on a written that representation rather than making its inquiry. So in light of DDJ, it's a court of appeals case. Why wasn't reliance reasonable here? So, Your Honor, reliance wasn't reasonable here because the town board, there's a non-delegable duty of the town board to approve Harris Beach. Even assuming that the Harris Beach letters and the May letter were not the product of corruption, which we'll assume for this case, that's being visited in other forums. But even if you take those letters at face value, Harris Beach and May are not the town board. And they do not represent in those letters that the town board had engaged in a formal resolution. Okay, but they're agents of the town, right? Yes. We dispute that they are. At least the town council. So, Your Honor, here's what I would say to that. First of all, the entitlement to rely on the author of the letter. If PHL has a problem with the letter, they can sue Harris Beach. Mr. May is already under criminal indictment. He's pleaded. But if they have a problem with the author of the letter, that's what remediation speaks to. There's not reasonable reliance on the town board. And it goes back to the— The May letter, the town council's own letter, right? MEI letter. Doesn't that letter essentially assure the plaintiff here, or PHL, that the town basically has done what it needs to do? It makes a formal legal assurance. It does not in a way that justifies reliance. And here's why. What the town, what the May and the Harris Beach letters say, in identical language, is the conclusory statement at joint appendix 136 and joint appendix 144, the TOBE documents have been duly authorized by all necessary action of TOBE. But what's missing from that sentence is any reference to a formal town board resolution as required by town law 646. And it goes on to say in the next paragraph, the TOBE documents are the valid binding obligations of TOBE enforceable. And so, I guess my question here is, when you have lawyers making assurances about their matter of expertise, and at least one of them unquestionably being an agent of the town—I understand your argument about Harris Beach—why isn't it reasonable for a plaintiff to rely? So the answer, Your Honor, is town law 64B—sorry, town law 646. As a matter of New York law, and let's go back to what Chief Judge Katzmann said a moment ago. And Judge Feuerstein goes into this in great detail. She cites you three pages of New York law. And I would commend you to the cases that she cites in those pages at Special Appendix pages 31 to 37 and Special Appendix 32 to 34. New York law does two things. Number one, it charges contracting parties with knowledge of the statutory requirements of contracts. Strictly, it charges you with knowledge. And number two, and this is the key, Your Honor, it puts the risk of being wrong on the contracting party. And the reason is parsed. At this point, I see the power of that, especially in the breach of contract. But we have misrepresentation and fraud claims here. And it seems to me that what you're really suggesting to us is that towns are free to hire lawyers who lie. Lawyers who will go out—and let me just finish the question for a moment. Lawyers who go out and misrepresent the legal status of certain agreements, the legal enforceability of certain agreements, and that towns can do that without incurring any obligation because they'll be free to come back and say, well, you know, under such and such background New York law, this was never enforceable. And you should never have believed our lawyers when they said so. So that's not right, Your Honor. If a town lies and there's actually a quantum merit case, there are the rare exceptions that allow the contracting party to recover. But the risk is put on the contracting party. And New York law does this very strictly. It may be surprising, but it does it very strictly. It puts the risk on the contracting party to protect the taxpayer. And as between the taxpayer and the contracting party, especially sophisticated contracting parties as here, New York law says the risk is on the contracting party. And the cases are legion. If you are invited to do a no-competition bid, you're not allowed to rely on it, even if a lawyer told you it was okay because the competitive bidding laws require it. You are charged with knowledge of the statutory requirements for contracts and you are charged with taking the risk on yourself if you get the town's apparent authority wrong. And it doesn't matter whether the town's authority came from the lawyer or not. It doesn't matter if the town's own lawyer assured you it was okay. That's correct, Your Honor. These documents are facially full of red flags. We know that you need a town board resolution. Where in these two documents that we just looked at is there any reference to a relevant town board resolution? And I do want to put the nail in the 605-2010, the June 2010 resolution. Your Honor, that can't possibly be the authorization here. It's not referred to in the guarantee, but even if it were, it's referred to in the opinion letters. That can't possibly be the authorization here because New York law doesn't give one town board the authority to write a blank check that allows a contracting party to insist that it has authority even if a subsequent town board a year later hasn't approved it. So in order to read the contracting authority of the municipality strictly, the way town law 64-6 requires, it may seem surprising, but yes, you have to say it is not just, we believe, just forest incorrectly reasoned based on New York law and we respectfully urge you to affirm that it was unreasonable to rely on a town letter even from an attorney that did not refer to the sine qua non of a municipal contract and that is a town board resolution. Town board resolutions are very clear things. You can look at one at Joint Appendix 708. It writes down all the town board members' names and puts I next to their names. It has to be done in sunshine under the open meetings law and when you don't have a town board resolution, you don't have a contract. That's New York law and phonied up lawyer letters should not enable contracting parties to escape their obligations to do due diligence, know the law, follow it, and only try to insist on contract rights if the town board approved it. Otherwise, PARSA is undermined and improvidence and corruption are protected. So if you want to stop corruption by town attorneys, you should affirm here rather than reverse. If there are no questions on the contract or the unjust enrichment point, we'll rely on Judge Feuerstein's excellent, well-reasoned opinion. We respectfully request that you affirm and if I may, Chief Justice Katz, one more point. My friend opened with saying that reconsideration changed the reasoning. It did not. It changed the reasoning on the delegation to the town supervisor, but if you compare Special Appendix 23 with Special Appendix 50 and 51, the town board resolution part of her reasoning remains unchanged and despite the unjust enrichment point and even the fraud point, we respectfully request that you affirm. Oh, there's nothing that could be found on remand because if you're looking for a town resolution, they're public documents. So this is not a case in which, as my friend suggests, discovery will do them any good. There have been seven civil cases and three prosecutions arising from these events. If there was a town resolution out there that could do anything better than the rabbit out of the hat of the 2010 resolution, it would have been found. It can't be. Remand would be futile. We respectfully request that you affirm. Unfortunately, we're not parties to those proceedings, so we don't know whether that rabbit exists or not. I can tell you, Your Honor, that there is no case and my colleague has not pointed to a case, Justice, the underlying judge did not point to a case that holds that there shall be a one-to-one ratio between resolution and agreement. It doesn't exist. That may be their reading. That is certainly their argument, but that case does not exist. So we are again delving into whether or not certain resolutions were sufficient and the nature and quality of them. Your Honor, to your point about what do you do if a town attorney lies, what do you do if a town is making misrepresentations, well, I'll submit to you that Judge Jamieson in the Phoenix case in the state court actually asserted those as alternative grounds as to why dismissal was not warranted. Citing the Bender v. New York City Health and Hospital case, and it's in the appendix at A428 to A430, the court found that the town could even be liable in the absence of a resolution, quote, where a governmental subdivision acts or comports itself wrongfully or negligently, inducing reliance by a party who is entitled to rely and who changes his position to his detriment or prejudice. And that subdivision should be stopped from asserting a right of defense which it otherwise could have raised. That's in a court of appeals case from 1976 cited by Justice Jamieson as one of her additional grounds for not granting a dismissal at that early juncture because of these various allegations that were still in the air. With regard to the cases cited pertaining to, well, that my colleague asserted that Justice Feuerstein had gone through on her decision as it pertains to the need for a resolution, none of them deal with the facts of this case. The Merrick Gables case, there was no writing at all. It was a verbal representation made to a few folks where there was no board resolution and there was a moratorium in place prohibiting cell towers. The Plaza Drive case involved an unsigned letter that was sent to the town that was not countersigned, not signed by anybody. That is not this case. We have a written agreement signed by an authorized person at the town. We have two opinion letters from two different attorneys stating that all of the prerequisites were done. We have a resolution authorizing the supervisor to enter into agreement to facilitate loan transactions such as this. We are arguing about the sufficiency and degrees here, which is not appropriate on this stage of the case. Thank you. Thank you. Thank you both for your arguments. The court will reserve decision. The final two cases on the calendar, Coleman v. United States and United States v. Ojedon are on submission. The clerk will adjourn court.